UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                          Case No. 14-20228

REGINALD WILLIS,               HON. AVERN COHN

    Defendant.

_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS (Doc. 12)

### I. INTRODUCTION

This is a criminal case. Pursuant to a warrant, police officers searched Defendant Reginald Willis's home and found cocaine, marijuana, and multiple firearms. Defendant was arrested and charged in a five-count indictment (Doc. 1):

    Count One    Possession with Intent to Distribute Controlled Substance (cocaine base) in violation of 21 U.S.C. § 841(a)(1);

    Count Two    Possession With Intent to Distribute Controlled Substance (Marijuana) in violation of 21 U.S.C. § 841(a)(1);

    Count Three    Possession of a Stolen Firearm(s) in violation of 18 U.S.C. § 922(j);

    Count Four    Possession of a Firearm with Obliterated Serial Number in violation of 18 U.S.C. § 922(k); and

    Count Five    Possession of Firearm in Furtherance of Drug Trafficking Crime in violation of 18 U.S.C. § 924(c).

In addition, the indictment contains a forfeiture claim, under 18 U.S.C. § 924(d), for the

firearms and ammunition.

Now before the Court is Defendant's Motion to Suppress Evidence (Doc. 12), which argues (1) that evidence seized from his home must be suppressed on the grounds that the search warrant failed to adequately describe the place to be searched, and (2) that incriminating statements made to police are inadmissible because they were involuntary given and because Defendant was not advised of his *Miranda* rights. For the reasons that follow, the motion is DENIED.

## II. BACKGROUND[1]

In February of 2014, police officers from the Jackson Narcotics Enforcement Team (JNET), a multi-jurisdictional drug task force, were informed by a confidential informant (CI) that Defendant was selling crack cocaine and marijuana from 916 Third Street, Jackson, Michigan, an apartment complex building. The CI was used on prior occasions and proved to be trustworthy.

Police used the CI to set up a controlled purchase, which is described in Jackson County Sheriff Department Detective Amy Bretes's (Bretes) affidavit in support of a search warrant:

> 8) Your Affiant provided CI with prerecorded buy funds to purchase crack cocaine and marijuana from 916 Third St.
>
> 9) Your Affiant followed CI to 916 Street. JNET Officers observed CI approached 916 Third Street and enter the duplex through the front entrance. Several minutes later the CI exited the front entrance.
>
> 10) The CI then drove directly to a predetermined meet location. The CI was

---

[1] On August 28, 2014, the Court held an evidentiary hearing on the motion at which Trooper Teachout and Defendant testified.

> under constant surveillance by JNET officers and CI did not make contact with anyone on the way to the transaction or returning to the meet location.
>
> 11) Upon returning to Your Affiant, CI handed Your Affiant one clear knotted bag with a green leafy substance and one clear knotted bag with a chunk of an off white rock like substance, which CI had purchased as marijuana and crack cocaine from Reginald Thomas Willis. Your Affiant field tested the suspected marijuana and crack cocaine with positive results.
>
> * * * *
>
> 13) CI advised Your Affiant that CI observed a silver handgun, a large Ziploc bag of suspected marijuana and further suspected crack cocaine while inside the residence.

(Doc. 13-2 at 3–4).

Following the controlled purchase, police sought a warrant in the 12th District Court of Jackson County to search Defendant's apartment. Bretes's affidavit in support of the warrant describes the place to be searched:

> A wood frame, multi-story, multi family dwelling located at 916 Third St. The residence is yellow in color with an open covered front porch over the front entrance. The numbers 916 are affixed above the covered porch vertically, in black. The residence is located on the west side of Third Street and is the first structure north of Union St. A detached garage is located to the west of the residence facing south. The front entrance of the structure faces east and leads into a foyer. The stairs to the upstairs apartment to be searched are to the right of the entrance door within the foyer. The residence is located in the City of Jackson, County of Jackson, in the State of Michigan.
>
> Any and all vehicles associated with the residence at the time the search warrant is executed whether located on the street or within the curtilage of the residence.
>
> Any and all out buildings, trailers or garages at the time the search warrant is executed.
>
> Any and all persons present or that arrive during the execution of this search warrant, including their clothing and vehicles.

(Doc. 13-2 at 1).

3

A warrant issued on February 5, 2014 at 9:10 p.m. The search was executed that same night. Police found in Defendant's apartment the crack cocaine, marijuana, and firearms that form the basis of the indictment. Defendant, who was present during the execution of the search warrant, was arrested.

Directly after his arrest, Defendant was led into a small bathroom by Trooper Teachout (Teachout) of the Michigan State Police, a member of the JNET task force, and questioned about his knowledge of the guns and drugs found in the apartment. (Doc. 12 at 7). Defendant sat on the toilet and Teachout sat on the edge of the bathtub, approximately two feet away. Teachout was armed at the time; however, at no point did he remove his firearm from its holster. Defendant gave multiple incriminating statements to Teachout that he was selling marijuana and crack cocaine and owned the firearms in the apartment. Defendant contends that he was not read his *Miranda*[2] rights prior to giving any statements to police.

### III. DISCUSSION

In the Motion to Suppress, Defendant argues (1) that the evidence seized from his apartment—the drugs and firearms—should be suppressed because the search warrant failed to describe the place to be searched with sufficient particularity, and (2) that statements made after he was arrested should be suppressed because he was not advised of his *Miranda* rights and that his confession was involuntary.

#### A. Description of Premises

Defendant's first argument, that the evidence seized from his apartment should be

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

suppressed because Bretes's affidavit did not particularly describe the place to be searched, is without merit.

The Sixth Circuit has explained the warrant requirements for describing the place to be searched:

> . . . The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991). In determining whether the warrant describes with sufficient particularity the place to be searched, we consider: "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005) (quoting *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989)). An error in description does not, however, automatically invalidate a search warrant. *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002). The test for determining whether a search warrant describes the premises to be searched with sufficient particularity "is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *Id.* (citations omitted).

*United States v. Hang Le-Thy Tran*, 433 F.3d 472, 479-80 (6th Cir. 2006).

Here, the description of the place to be searched satisfies the Fourth Amendment. To begin, the affidavit and warrant describe the apartment building with particularity— "[a] wood frame, multi-story, multi family dwelling located at 916 Third St." Then, the affidavit and warrant state that "[t]he stairs to the *upstairs apartment to be searched* are to the right of the entrance door within the foyer." The affidavit clearly indicates that there was a distinct difference between the upstairs and downstairs apartments, and plainly identifies the upstairs apartment as the one to be searched.

Defendant argues that because the affidavit identified the "upstairs apartment to be

searched" *indirectly*—in the context of describing the location of the staircase within the main entry foyer—the affidavit is not clear that *only* the upstairs apartment was to be searched. However, such a reading misconstrues the plain language of the affidavit and injects unnecessary ambiguity into an otherwise clear description. There was no reasonable probability that another apartment or area withing the building would mistakenly be searched.

Next, Defendant argues that the warrant was not supported by probable cause with respect the upstairs apartment. Specifically, Defendant says that nothing in the affidavit explains why evidence was likely to have been found in the upstairs apartment, as opposed to the basement or lower level apartment. This argument, too, is without merit. Police, prior to obtaining the warrant, conducted a controlled buy using a trusted CI. The CI identified Defendant by name, purchased drugs from Defendant, and provided this information to Bretes and other officers, noting that Defendant had a gun in the apartment. Based on this information, Bretes submitted an affidavit clearly identifying the upstairs apartment as the target of the search, which narrowly limited the scope of the intended search to this particular residence. Probable cause will be supported where, under the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). This has been satisfied with respect to the upstairs apartment.

Finally, even if there was a technical error in the warrant, the officers' good faith reliance in executing the warrant renders the suppression of the evidence inappropriate. Where the officers' conduct is "objectively reasonable," the "good-faith exception" applies since "'excluding the evidence will not further the ends of the exclusionary rule in any

appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'" *United States v. Laughton*, 409 F.3d 744, 753 (6th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984). Here, the officers relied in good faith on the description of the place to be searched—the upstairs apartment—contained in the affidavit and warrant. The Court will not exclude the evidence seized in the search.

### B. The Confession

Next, Defendant says that the incriminating statements made to Teachout should be suppressed, arguing (1) that Defendant was not read his *Miranda* rights, and (2) that, given the circumstances under which Defendant was questioned, the environment was so inherently intimidating that his confession was coerced. This argument, too, is without merit.

First, Defendant contends that because Teachout never read him his *Miranda* rights, his confession should be suppressed. By contrast, Teachout testified that he read Defendant his *Miranda* rights from his Michigan State Police-issued laminated card, which he retains in his wallet for easy access. Teachout says that Defendant agreed to give up his rights and stated that he did not have any questions regarding those rights. Defendant then answered Teachout's questions, admitting to selling marijuana and cocaine and to possessing the firearms found in the apartment.

The Court finds Teachout to be the more credible witness. On the witness stand, Teachout clearly recalled reading Defendant his *Miranda* rights from his laminated card. He further stated that, to the best of his recollection, he has never failed to advise any

person in custody of their *Miranda* rights, nor has he ever participated in an evidentiary hearing where a judge found that he had not advised someone of their *Miranda* rights. (Doc. 19. at 31-32). In addition, Teachout's testimony was fully consistent with the situation described in the Government's response briefs. The Court finds Teachout's version of events to be credible.

Secondly, Defendant argues that regardless of whether he was read his *Miranda* rights, he was coerced into giving the confession. Defendant says that the manner in which Teachout obtained the confession was so inherently intimidating as to render it involuntary. Defendant says that the confession occurred in a small bathroom, with Defendant sitting on the toilet and Teachout sitting on the bathtub only two feet away—essentially knee-to-knee. At the time, Defendant was handcuffed. Teachout was armed, though he never removed his firearm from its holster. Defendant says that this "highly intimidating environment" resulted in an involuntary confession, which should therefore be suppressed. Defendant also points to Teachout's hearing testimony, agreeing that police raids are conducted in such a manner to elicit compliance with law enforcement, and stating that police raids are generally "emotional" with "lots of fear usually involved."

A confession is involuntary if, under the totality of the circumstances, law enforcement officials obtained evidence by overbearing the will of the accused. *Haynes v. Washington*, 373 U.S. 503, 513-514 (1963); *see also United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (stating that the voluntariness of a confession depends on "whether the will of the accused has been overwhelmed by official pressure"). In evaluating the voluntariness of a confession, the Sixth Circuit has identified three requirements for finding that a statement was involuntary: that "(i) the police activity was objectively coercive;

8

(ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)).

Under this standard, Defendant's arguments cannot prevail. To begin, the environment in which Teachout questioned Defendant was not objectively coercive. Although the questioning occurred in a small, confined space, while Defendant was handcuffed, and with only a couple feet separating Teachout and Defendant, this does not make the questioning inherently coercive. Teachout chose to conduct the questioning in the bathroom because it had been cleared by the search team, and provided Defendant privacy to "speak more freely." (Doc. 19, at 22) At no point did Teachout threaten Defendant or remove his firearm from his holster. Certainly, there is a certain degree of intimidation inherently involved in any police raid, and although Defendant's questioning within the close confines of Defendant's bathroom undoubtedly contributed to Defendant's feeling of apprehension, this does not rise to the level of coercion seen in other cases where a confession was found to be involuntary. Indeed, many of the cases cited by Defendant are distinguishable, as they involve direct threats or violence not present here. *See. e.g.*, *Lynumn v. Illinois*, 372 U.S. 528 (1963) (law enforcement threatened that if the defendant did not cooperate, her children would be taken away from her); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir.1988) (one officer struck defendant and another detective threatened defendant); *United States v. Ivy*, 165 F.3d 397, 402–04 (6th Cir.1998) ( officers threatened to arrest defendant's girlfriend and to place defendant's child into protective custody).

Defendant states that he was "intimidated" by Teachout's proximity. However,

Teachout testified that Defendant was "cooperative" and "quiet," and "made several statements that he was upset that he had been caught." (Doc. 19, at 23) Defendant also had at least six prior contacts with law enforcement, including arrests and traffic matters. Despite this prior experience with law enforcement, Defendant never asked Teachout to stop the questioning, never asked to see an attorney, and never objected to being in the bathroom with Teachout. There is no indication that Teachout's questioning was so coercive as to actually overbear Defendant's will.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress has been denied.

SO ORDERED.


      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2014


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 31, 2014, by electronic and/or ordinary mail.

      S/Sakne Chami
      Case Manager, (313) 234-5160